UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JESSORE MANAGEMENT SA,                          :

                Plaintiff,                :

        -against-                        :      **MEMORANDUM AND ORDER**

BRIT SYNDICATE 2987 A/K/A BRIT UW               :      20-CV-5849 (AT) (KNF)
LIMITED; LLOYD'S SYNDICATE 2007
A/K/A AXIS  CORPORATE CAPITAL UK                :
II LIMITED; LLOYD'S  SYNDICATE 1945
A/K/A SIRIUS INTERNATIONAL SYNDICATE   :
1945 AT LLOYD'S; LLOYD' SYNDICATE  4141
A/K/A HCC SYNDICATE 4141 AT LLOYD'S;           :
LLOYD'S SYNDICATE 2001 A/K/A MS AMLIN
CORPORATE MEMBER LIMITED and ALL               :
LLOYD'S UNDERWRITERS AS PER LINESLIP
B0901LH1722304000,                              :

             Defendants.             :
---------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## PLAINTIFF'S MOTION

       This is an action, commenced on July 28, 2020, for breach of a maritime insurance policy

for the plaintiff's sailing catamaran which was lost in March 2017, after its mast snapped in

rough seas and high winds.  Before the Court is the plaintiff's motion pursuant to "Rules 26 and

37 of the Federal Rules of Civil Procedure" seeking an order:

      1) striking Defendants' answer and awarding a default judgment to Plaintiff, along
      with its costs and attorneys' fees expended in making the motion, or, in the
      alternative, 2) imposing adverse inference sanctions and declaring that documents
      not produced, concerning nondisclosure and Defendants' decision to nullify the
      Policy, would have been adverse to Defendants on those issues had they been
      produced, or, in the alternative, 3) for an order: (a) compelling Defendants to
      produce outstanding discovery (interrogatories and document requests) without
      claiming certain objections which they have waived; (b) stating that Defendants
      have waived all objections to Plaintiff's Interrogatories and Plaintiff's Second
      Document Request; (c) stating that Defendants have waived all objections on the
      basis of privilege to Plaintiff's First Document Request; (d) stating that any further

> failure by Defendants to meet discovery deadlines will result in Defendants'
> Answer being stricken and a default judgment awarded to Plaintiff; (e) awarding
> Plaintiff all costs and attorneys' fees expended in the making of the motion; and (f)
> ordering that fact discovery be extended to 45 days beyond the date of the Court's
> ruling on the motion and expert discovery to 45 days later; and 4) for other relief
> this Court may deem just and proper.

The plaintiff argues that the defendants' failure to respond to the plaintiff's December 2, 2020 interrogatories, move for a protective order timely, as noted in the Court's March 26, 2021 order, or seek an extension of the time for completing discovery waives all objections to those discovery requests. The plaintiff requests an order directing the defendants to respond to the interrogatories without any objections.

According to the plaintiff, the defendants asserted "attorney client privilege, attorney work product doctrine or other applicable privilege" in their specific "Responses 4, 5, 9, 13, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 38, 42, 43" and as general objections with respect to "Responses 6, 8, 10, 11, 12, 16, 39, 40" to the plaintiff's First Request for Production of Documents, in violation of Fed. R. Civ. P. 34(b)(2)(C). The defendants did not indicate anywhere whether any responsive materials were being withheld based on the privilege objections, also in violation of Fed. R. Civ. P. 34(b)(2)(C), and they failed to produce a timely privilege log, as required by Fed. R. Civ. P. 26(b)(5)(A) and Local Civil Rule 26.2 of this court. The plaintiff contends that the defendants' privilege log produced on April 20, 20201, the date the instant motion was filed, appears on its face to be inadequate. Moreover, the defendants failed to respond to the plaintiff's Second Request for Production of Documents dated February 17, 2021. The plaintiff asserts that the defendants waived their objections to: (i) the First Request for Production of Documents based on privilege by failing to provide timely their privilege log; and (ii) the Second Request for Production of Documents by failing to respond.

The plaintiff contends that even if the defendants did not waive their privilege objections, the files of Clyde & Co, defendant Brit Syndicate 2987 a/k/a Brit UW Limited's ("Brit") English solicitors, including the record of Clyde & Co's appointed surveyor, Eric Ogden ("Ogden"), are not privileged because:

> (a) Brit delegated to Clyde & Co its duty to investigate and adjust Plaintiff's insurance claim; Clyde's role included representing the interests of plaintiff, both for the adjustment; Clyde even represented Plaintiff's interests, in the defense of claims by third parties against plaintiff arising out of the loss, Kleiner Decl., ¶10, Exhibit 7; and Clyde's records are thus not subject to privilege; and (b) Defendants' unspecified claims of privilege are being used to mask Defendants' "ordinary course" investigation and handling of the insurance claim. Defendants' former employee, Kevin Allmond, testified that Clyde were handling the claim in parallel with Brit; and that he was not involved in the decision to void the policy. He ceased to handle any aspect of the claim in October 2019, at which time, according to his testimony, Brit had not yet decided to nullify the policy.

The plaintiff asserts that the defendants must produce all communications between underwriters subscribing to the policy for the vessel at issue in this action and their general objections and refusal to produce documents are unwarranted.  As the Court noted in its March 26, 2021 order concerning the defendants' assertion of "Lloyd's Claim Scheme" defense:

> The defendants' assertion that 'the Court is aware, under the Lloyd's Claim Scheme, decisions with respect to claims are made by the lead underwriter in consultation with the second lead underwriter' and 'the remainder of the underwriters subscribing to the insurance policy (the 'Following Market') are bound by the decision of the leads' are baseless. The defendants failed to identify any order permitting their production on a rolling basis that extends beyond the discovery deadline. In their response, the defendants make citation to Rule 26 (c) of the Federal Rules of Civil Procedure, without making any argument or seeking any relief in connection with it. The defendants did not respond to the plaintiff's March 2, 2021 letter by seeking a protective order and they only responded to the plaintiff's March 2, 2021 letter because they were ordered to do so by the Court. Thus, the defendants waived any opportunity to seek a protective order by failing to raise it timely with the Court.

Since the defendants failed to seek a protective order timely, they waived their right to seek one. The plaintiff argues that the defendants cannot show good cause for permitting three of the five defendants to refrain from producing responsive documents.  According to the plaintiff,

> based on Plaintiff's theory of the case, including that underwriters only explored grounds for nullifying the Policy following the financial setbacks of the 2017 hurricane season, it is essential for Plaintiff to be able to review Defendants' related records, including records relating to: (1) the decision to discontinue insuring yachts; (2) the policies and guidelines for running down or reducing the remaining policies and claims relating to yachts; (3) any changes in claim handling procedures for such remaining claims, including Jessore's claim; and (4) decisions and discussions regarding nondisclosure and nullification of the Jessore Policy. While Plaintiff is entitled to full discovery from all the Defendants in this case, Plaintiff proposed at the March 31, 2021 Meet & Confer that that Defendants be required to produce records unique to the particular underwriter and communications between the underwriters that included underwriters 3-5 of the group (i.e., LLOYD'S SYNDICATE 1945, LLOYD'S SYNDICATE 4141, and LLOYD'S SYNDICATE 2001), to avoid duplicating Brit and Axis's production to date. *See* Doc. 32 at p. 2. Defendants refused this proposal. Doc. 32, p. 3, No. 5. Plaintiff requests that the Court order production of these documents.

The plaintiff contends that sanctions are warranted based on the defendants' obstructive conduct and failure to comply with the Court's orders.  The defendants have not served their responses to interrogatories and failed to provide timely their privilege log "as promised in their letter to the Court (Doc. 29)," in which they represented that their final production would be served by March 22, 2021, which was not the case.  At the meet and confer conference, the defendants promised that the interrogatory responses and outstanding documents would be produced by April 2, 2021, but that did not occur.  As a result of the defendants' "continuing failure to cooperate and abide by their discovery obligations and Your Honor's Order (Exh. 6 to Kleiner Declaration), the Plaintiff has been prejudiced in its preparation for trial; and the originally requested extension of 45 days for fact and expert discovery is now insufficient." Moreover, the Court warned of the possibility of sanctions, including the harshest sanction.  The

plaintiff argues that an adverse inference is warranted "with respect to the unproduced records relating to its defense of nondisclosure and policy nullification."

In support of its motion, the plaintiff submitted a declaration by its attorney James D. Kleiner ("Kleiner") with Exhibit 1 ("Plaintiff's First Document Requests of October 31, 2020"), Exhibit 2 ("Defendants' Responses to Plaintiff's First Document Requests"), Exhibit 3 ("Plaintiff's Interrogatories"), Exhibit 4 ("Plaintiff's Second Document Requests"), Exhibit 5 ("Order dated March 16, 2021 (Doc. 28)"), Exhibit 6 ("Order dated March 26, 2021 (Doc. 31)"), Exhibit 7 ("Deposition Transcript of Robert Williams") and Exhibit 8 ("Deposition Transcript of Kevin Allmond").  Kleiner asserts that the discovery issues, listed in the April 2, 2021 joint letter, are still outstanding.

## DEFENDANTS' OPPOSITION TO THE MOTION

The defendants argue that the plaintiff's "interrogatories exceeded the scope of Local Civil Rule 33.3," and since they were invalid on their face, "there has been no waiver."  The defendants produced a detailed privilege log with a brief delay, which should not be subject to the harsh remedy of "across-the-border waiver."  During the parties' meet and confer conference, the defendants informed the plaintiff that the privilege log is forthcoming, and the plaintiff's counsel had no objection.  According to the defendants, their privilege log provides sufficient information and does not warrant a finding of waiver.  The defendants assert that the plaintiff's Second Request for Production of Documents is duplicative of its First Request for Production of Documents, to which the defendants responded and objected timely, including

> for example, requests for correspondence related to Jessore's claim (No. 19), the claims file (No. 20), communications between defendants and any party (Nos. 30, 31), and all investigation files and documents concerning the loss and the claim (No. 27, 33).  Defendants responded to these demands and objected on the basis of attorney-client and attorney, attached as Exhibit A. product privilege. In its Second Request for Production of Documents again sought correspondence related to the

claim and investigation involving Clyde & Co., which had previously been objected to, as well as additionally documents related to certain underwriting manuals and attachments to previously produced emails. *See* Saville Aff. Ex. B. While Requests 2 and 3 may have requested new material, Request No. 1 did not and, therefore, the objection previously interposed remained valid. Therefore, there is no basis to find that Defendants waived their objection.  Clearly, as is illustrated below, for valid legal reasons, Defendants maintain that the requested documents are subject to attorney client privilege and/or attorney work product.  With respect to Requests 2 and 3, Defendants objected to the production of those documents when Plaintiff requested them in its first demand. *See* Saville Affirmation Ex. A, Requests 2, 3; and Saville Affirmation Ex. B, Requests 5; 19.  In Request 3, Plaintiff seeks to obtain complete copies of the underwriting guidelines Bates Nos. DEF 2356-2361. Upon further investigation, Bates Nos DEF 2356-2361 is the totality of the underwriting guidelines requested.  Lastly, Defendants have produced non-privileged communications between Clyde & Co. and Defendants, and Clyde & Co. and Marsh JLT as requested. Therefore, there is no basis for a finding of waiver.

The defendants contend that the attorney-client privilege has not been waived with respect to the files of Clyde & Co. since they objected properly.  According to the defendants, English counsel for Underwriters, Clyde & Co. was retained by Brit on June 13, 2017, in connection with the claim submitted by Jessore.  Brit, as the leading Lloyd's Syndicate together with the second Lloyd's syndicate Novae Syndicate NVA 2007, appointed Clyde & Co., to represent all insurers that subscribed to the policy.  Clyde & Co.'s retention was to consider and evaluate potential issues with respect to coverage under the policy.  It is the underwriters' position that the communications between the underwriters and Clyde & Co. are protected by the attorney-client privilege and the underwriters did not waive the privilege.

Concerning the attorney work-product doctrine, "on December 18, 2018, Jessore's French counsel directly threatened litigation in the French courts," and the litigation was reasonably anticipated on that date; thus, documents prepared after that date are subject to attorney work-product doctrine where applicable.  Moreover, Ogden was retained by Clyde & Co. to assist in the defense of the underwriters' interests in the French proceeding and to offer

guidance on the various coverage issues presented by the plaintiff's claim.  Thus, Ogden was an

agent and "Ogden's files and correspondence with counsel are protected from disclosure" by the

attorney-client privilege.  Ogden is an expert witness in this action and the defendants will

produce his opinion in accordance with applicable rules.  The plaintiff failed to establish

exceptional circumstances warranting disclosure of Ogden's communications to counsel.

The defendants contend that they objected properly "to the production of documents, if

any, related to this claim from the following market.  The Policy at issue incorporated the

Lloyd's Claim Scheme, by which following market underwriters were bound by the decision

making of the lead (Brit) and agreement (Axis) underwriters."  Under Lloyd's Claim Scheme,

> the Lead Insurer, with the agreement of the Agreement Party, has the authority to
> bind the Following Market to any and all decisions with respect to the Policies
> including, but not limited to, coverage, strategy, litigation and the decision on the
> payment of claims. Therefore, the information and documentation sought by
> Jessore in this litigation is not only duplicative but is also entirely irrelevant. If the
> following market has taken issue with any of the positions taken by the lead, that
> correspondence would have been encompassed within the searched performed and
> produced. Therefore, under Rule 26(b), discovery of the following market would
> not be proportional to the needs of the case and, therefore, Jessore's request must
> be denied.

The defendants assert that sanctions are not warranted absent bad faith and prejudice, and the

discovery issues in this case are "not rooted in bad faith or irremediable prejudice, but rather

based on an apparent impasse over privileged and non-privileged documents."

In support of its opposition to the motion, the defendants submitted an affirmation by: (1)

the defendants' attorney, James A Saville., Jr. ("Saville"), with Exhibit A ("Plaintiff's First

Request for Production of Documents"), Exhibit B ("Plaintiff's Second Request for Production

of Documents") and Exhibit C ("the December 18, 2018, letter from Jessore's French counsel

Mr. [Jerôme] Moulet to Underwriters' French counsel Mr. Laroque, taken from Jessore's

production in  this litigation"); and (2) Andrew Nicholas ("Nicholas"), a solicitor and partner in

Clyde & Co. Saville states that on March 31, 2021, during the parties' meet and confer conference, he informed the plaintiff's counsel that privilege logs were forthcoming, and counsel made no objection. Nicholas states:

> 2. Clyde & Co. was retained by Lloyd's Syndicate BRT 2987, referred to as Brit Global Specialty, on or about June 13, 2017, in connection with a claim submitted by Jessore Management SA ("Jessore") involving damage to the sailing yacht the JESSEAS II. Brit was the leading Lloyd's Syndicate for claims purposes, on marine hull insurance policy 80901LH1722775000 (the "Policy"), issued to Jessore. Brit, as the leading Lloyd's Syndicate together with the second Lloyd's syndicate Novae Syndicate NVA 2007, appointed Clyde & Co., to represent all insurers that subscribed to the Policy (collectively the "Underwriters").
>
> 3. Clyde & Co.'s retention was to consider and evaluate potential issues with respect to coverage under the Policy. Consistent with this retention, on June 21, 2017, on behalf of Underwriters, Clyde & Co. issued a reservation of rights with regard to policy coverage and liability. A further reservation of rights was also forwarded to Jessore's French lawyer, Jerôme Moulet, on August 30, 2017.
>
> 4. As part of Clyde & Co.'s coverage investigation, it was discovered that there may have been material non-disclosures by Jessore that would serve as a basis to void the Policy. It is Clyde & Co's position that the communications among Underwriters and Clyde & Co. are protected by the attorney-client privilege and Underwriters have not waived that privilege.
>
> 5. Clyde & Co. was also appointed in connection with certain investigative French proceedings instituted by plaintiff Jessore before the High Court of Perpignan in May 2017. This action was initially commenced against SAS Privilège Marine, the builder, and SA AXA France, Privilège's insurers. SAS Lorima, the mast manufacturer, was later joined. In forwarding a copy of the initiating French Court order in September 2017 to Brit, Jessore's French counsel stated in was in Brit's "interest to be represented to all court survey meetings". The first French Court survey meeting was scheduled for November 10, 2017.
>
> 6. On November 6, 2017, Clyde & Co., with Underwriters' approval, appointed Hervé Laroque of the French law firm Laroque and Partners. Although Brit was not initially a party to the French Proceeding, Mr. Laroque was appointed to protect and represent Brit's interests and, to that end, attended the various French court proceedings. In early 2020, Privilège and AXA France applied to the French Court for an Order joining Brit to the French Proceedings. The Order joining Brit was issued on September 9, 2020.
>
> 7. On or about 9 November 2017, through Mr Laroque, Clyde & Co on behalf of Underwriters appointed Eric Ogden as a consulting expert to advise on certain technical issues raised in the French proceeding, such as the cause of the mast failure. It is Clyde & Co.'s position that all communications among Clyde & Co., the Underwriters, Mr. Laroque and Mr. Ogden are protected by the attorney-client privilege and Underwriters have not waived that privilege.

8. At no time was Clyde & Co instructed to adjust the claim submitted by Jessore. Clyde & Co's role was to investigate and consider the potential coverage and non disclosure issues in connection with Jessore's claim and defend Underwriters' interests with respect to the French Proceedings.

### PLAINTIFF'S REPLY

The plaintiff argues: (i) "plaintiff still has not received defendants' responses to interrogatories; it is too late for defendants to carp about the scope of interrogatories; the defendants waived all objections thereto and their failure to respond invites sanctions"; (ii) "defendants' privilege log is untimely and their egregious conduct in waiting to serve it on the date set by the Court for this motion should not be excused"; (iii) "Clyde & Co's files are not privileged and should be produced"; (iv) "records of and communications between all underwriters are discoverable"; and (v) "sanctions, including the harshest, are justified."  The plaintiff contends that the defendants assert now for the first time that they were not required to respond to the interrogatories because they exceed Local Civil Rule 33.3, but their reliance on "*US Bank Nat. Ass'n v. PHL Variable Ins*, 288 F.R.D. 282 (S.D.N.Y. 2012)" is misplaced because the defendants "repeatedly agreed to respond to Plaintiff's Interrogatories."  The defendants' refusal to respond based on Local Civil Rule 33.3 is untimely and their "argument that no responses were due provides further evidence that their representations to Plaintiff and the Court that responses would be served were made in bad faith."

According to the plaintiff, "[i]t is difficult to fathom how Defendants could declare to this Court that Plaintiff did not object to the lateness of their privilege log, given Plaintiff's numerous submissions seeking Court intervention and sanctions."  The defendants have no basis to assert now that their privilege log was timely because all parties know it was due on January 6, 2021. The plaintiff contends that the defendants' privilege log does not comply with the federal and local rules.  For example, the privilege log shows that material is being withheld because it is

9

"irrelevant," the defendants made no showing regarding relevance and the issue of relevance is left to the Court to decide.

> Defendants' privilege log does not adequately identify the documents over which privilege is claimed, such as the withheld records of the technical consultant, Eric Ogden and his communications with Clyde & Co. We are unable to see any communications listed between Eric Ogden and anyone, including, Clyde & Co. In fact the log has but one entry covering what must be thousands of records, referring to "Clyde & Co. Claim File", but with no attempt to describe the nature of individual or even groups of records. (See, Exh. 3 to Kleiner Decl.)

The defendants' delay is egregious and they "acted in bad faith by allowing the fact discovery period to elapse, all the while promising that their privilege log would be forthcoming." The four-month delay in production of the privilege log and bad faith conduct justify striking the answer. Moreover, the plaintiff never received the defendants' response to its Second Request for Production of Documents and the defendants failed to explain with any specificity why they did not respond, including to assert that any request is duplicative. Thus, any objections to the Second Request for Production of Documents should be deemed waived due to the defendants' failure to respond and produce timely their privilege log.

> According to the plaintiff,

> Defendants assert that "privilege has not been waived with respect to the files of Clyde & Co as a proper objection based on privilege was asserted in response to the document demands served by Jessore." It's unclear to Plaintiff where Defendants maintains that they lodged any proper response to Plaintiff's requests for Clyde & Co files, as Defendants have not even responded to such request in Plaintiff's Second Requests for Document Production. Further, Defendants maintain that Clyde & Co.'s files are protected by the work product privilege, however, Defendants fail to establish the elements of such privilege. . . . Defendants assert, via the affirmation of Andrew Nicholas, of Clyde & Co., that Clyde & Co was not engaged to "adjust" the claim. Mr. Nicholas confirms plaintiff's contention that Clyde & Co. was retained to "investigate" the claim. Brit's Kevin Allmond, in deposition, confirmed that Clyde & Co.'s reservation of rights related solely to whether the vessel was a constructive total loss and the issue of nondisclosure did not arise until the following year. Also, it is clear that there was no threat of litigation, until the end of 2018. Moulet Dec. ¶4. Also Clyde & Co's role in investigating Jessore's claim placed it in a relationship with defendants

other than that of attorney-client. By way of example, Clyde & Co was called upon to provide advice and defense regarding the third-party liability claim of Spanish fishing company, which involved the representation of interest, as the object of the claim. Regarding records after March of 2018, when the issue of possible nondisclosure was first proposed by Clyde & Co as a possible way of nullifying the policy, Underwriters concealed that issue from Jessore for more than one and a half years, in order to build the defense, using records and information demanded of Jessore under the guise of adjusting its claim. Privilege should not serve as a shield for such bad faith conduct.

The plaintiff asserts that the records of Clyde & Co are not privileged due to the defendants' failure to claim privilege in a timely and adequate privilege log, waiver and given Clyde & Co's role in investigating the claim, including, purportedly serving the interests of Jessore, as the insured.

Concerning records and communications between all underwriters, the defendants claim they are duplicative and irrelevant. However, the plaintiff "is prejudiced by Defendants' unjustified withholding of the five Underwriters' communications concerning the voiding of the Policy" and the evidence shows that all underwriters communicated regarding voiding the policy for non-disclosure. Although "Brit's Senior Claims Adjuster, Kevin Allmond, in deposition, confirmed that there would be email communications or meetings with all Underwriters, before any decision could be made to nullify the policy," "Brit, as the Leading Underwriter, and Syndicate 2007, the Second Underwriter, have not produced any such records." The defendants made no citation to any authority justifying the withholding of all underwriters' records.

The plaintiff argues that the defendants' demonstrated bad faith refusal to cooperate and comply with their discovery obligations, including failing to communicate, to meet and confer and produce discovery timely, warrant the harshest sanctions. The Court "only need to look at Defendants' letter to the Court on March 19, 2021 (Doc. 29), wherein Defendants advised this Court that interrogatory responses would be served on March 22, 2021. It is nearly impossible to

determine any other reasons for Defendants' conduct, other than its motivation of bad-faith and Defendants have cited no other reasons for their continued failure of their obligations for pre-trial discovery." The plaintiff requests that the Court strike the answer.

In support of its reply, the plaintiff submitted declarations by: (1) Jérôme Pierre Marie Moulet ("Moulet"), a French attorney who assisted the plaintiff with its claim under the insurance policy; and (2) its attorney James D. Kleiner with Exhibit 1 ("Application for Private Pleasure Insurance"), Exhibit 2 ("March 6, 2017 Notice of Loss"), Exhibit 3 ("Defendants' Privilege Log, Served 4/20/2021"), and Exhibit 4 ("Kev[i]n Allmond Deposition").

## LEGAL STANDARD

Party's Failure to Attend Its Own Deposition, Serve Answers to Interrogatories, or Respond to a Request for Inspection.
(1) *In General.*
(A) *Motion; Grounds for Sanctions.* The court where the action is pending may, on motion, order sanctions if:
(i) a party or a party's officer, director, or managing agent--or a person designated under Rule 30(b)(6) or 31(a)(4)--fails, after being served with proper notice, to appear for that person's deposition; or
(ii) a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response.
(B) *Certification.* A motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action.
(2) *Unacceptable Excuse for Failing to Act.* A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c).
(3) *Types of Sanctions.* Sanctions may include any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(d).

If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party[.]

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi).

## APPLICATION OF LEGAL STANDARD

### *Plaintiff's First Set of Interrogatories*

"The responding party must serve its answers and any objections within 30 days after being served with the interrogatories. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." Fed. R. Civ. P. 33(b)(2). "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4).

The plaintiff served its first set of interrogatories on December 2, 2020. The defendants did not serve their answers and any objections within 30 days after December 2, 2020. The defendants do not identify any evidence showing that the parties stipulated to a longer time for the defendants to serve their answers and any objections to the plaintiff's interrogatories and no order exists extending time to serve answers and any objections to the plaintiff's interrogatories. On July 8, 2021, more than seven months after they had been served with the plaintiff's interrogatories, the defendants assert, for the first time, that the plaintiff's interrogatories "exceeded the scope of Local Civil Rule 33.3 on their face and therefore, were invalid and there has been no waiver. *See US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, 288 F.R.D. 282 (S.D.N.Y

2012) (holding response were not required to Interrogatories beyond the scope of Local Rule 33.3).  Consequently, a finding of waiver is not justified."  The defendants' reliance on US Bank Nat. Ass'n is misplaced because in that case the plaintiff "served its Objections and Responses to . . . to PHL's First Set of Interrogatories," id. at 284, asserting that the interrogatories "exceeded the twenty-five permitted interrogatories under Rule 33 of the Federal Rules of Civil Procedure" because "within the 17 interrogatories, there are 85 subparts," id. at 289.  The defendants did not object to the plaintiff's interrogatories, including on the ground of non-compliance with Local Civil Rule 33.3 of this court, in their communications with the plaintiff or when they represented to the Court, in their March 19, 2021 letter that, "[w]hat we believe to be the final documents are being produced on Monday, March 22, 2021 together with Defendant's interrogatory responses." Docket Entry No. 29.  The defendants did not state their objections to any of the plaintiff's interrogatories with specificity, as required by Fed. R. Civ. P. 33(b)(4), and they did not show good cause to excuse their failure.   The Court finds that the defendants' objection that the plaintiff's interrogatories exceed the scope of Local Civil Rule 33.3, made for the first time in their opposition to the plaintiff's motion to compel, is untimely; thus, it is overruled. Accordingly, compelling the defendants to respond to the plaintiff's first set of interrogatories is warranted.

**_Privilege Log_**

_Trial Preparation: Materials_.
(A) _Documents and Tangible Things_. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

(B) *Protection Against Disclosure*. If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3)(A) & (B).

*Claiming Privilege or Protecting Trial-Preparation Materials.*
(A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
(i) expressly make the claim; and
(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26(b)(5)(A).

Local Civil Rule 26.2 of this court provides:

Assertion of Claim of Privilege
(a) Unless otherwise agreed by the parties or directed by the Court, where a claim of privilege is asserted in objecting to any means of discovery or disclosure, including but not limited to a deposition, and an answer is not provided on the basis of such assertion, (1) The person asserting the privilege shall identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked; and (2) The following information shall be provided in the objection, or (in the case of a deposition) in response to questions by the questioner, unless divulgence of such information would cause disclosure of the allegedly privileged information: (A) For documents: (i) the type of document, *e.g.*, letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other; (B) For oral communications: (i) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (ii) the date and place of communication; and (iii) the general subject matter of the communication.
(b) Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of such assertion, the information set forth in paragraph (a) above shall be furnished in writing at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court.
(c) Efficient means of providing information regarding claims of privilege are encouraged, and parties are encouraged to agree upon measures that further this

end. For example, when asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category. A party receiving a privilege log that groups documents or otherwise departs from a document-by-document or communication-by-communication listing may not object solely on that basis, but may object if the substantive information required by this rule has not been provided in a comprehensible form.

For the [attorney-client] privilege to apply, the communication from attorney to client must be made "for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship." *Rossi v. Blue Cross & Blue Shield of Greater N.Y.,* 73 N.Y.2d 588, 593, 542 N.Y.S.2d 508, 540 N.E.2d 703 (1989). The communication itself must be "primarily or predominantly of a legal character." *Id.* at 594, 542 N.Y.S.2d 508, 540 N.E.2d 703. "The critical inquiry is whether, viewing the lawyer's communication in its full content and context, it was made in order to render legal advice or services to the client." *Spectrum Sys. Int'l Corp. v. Chem. Bank,* 78 N.Y.2d 371, 379, 575 N.Y.S.2d 809, 581 N.E.2d 1055 (1991). "The proponent of the privilege has the burden of establishing that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and [that] it was made in order to assist in obtaining or providing legal advice or services to the client." *Charter One Bank, F.S.B. v. Midtown Rochester, L.L.C.,* 191 Misc.2d 154, 166, 738 N.Y.S.2d 179 (N.Y.Sup.Ct.2002); *accord People v. Mitchell,* 58 N.Y.2d 368, 373, 461 N.Y.S.2d 267, 448 N.E.2d 121 (1983) (citing cases). A communication between an attorney and the agent or employee of a corporation may be privileged where the agent "possessed the information needed by the corporation's attorneys in order to render informed legal advice." *In re Copper Mkt. Antitrust Litig.,* 200 F.R.D. 213, 218-19 (S.D.N.Y.2001) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 391, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)).

Allied Irish Banks, P.L.C. v. Bank of Am., N.A., 252 F.R.D. 163, 168 (S.D.N.Y. 2008).


To facilitate its determination of privilege, a court may require "an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps." The privilege log should: identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. Other required information, such as the relationship between ... individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony. Even under this approach, however, if the party invoking the privilege does not provide sufficient detail to demonstrate fulfillment of all the legal requirements for application of the privilege, his claim will be rejected.

U.S. v. Constr. Prod. Rsch., Inc., 73 F.3d 464, 473 (2d Cir. 1996) (internal citations omitted).

"The work-product doctrine, codified for the federal courts in Fed. R. Civ. P. 26(b)(3), is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries. United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (citation omitted). "Special treatment for opinion work product is justified because, '[a]t its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" Id. at 1197 (citation omitted).

> A document will be protected if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation." Conversely, protection will be withheld from "documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation."

> Schaeffler v. United States, 806 F.3d 34, 43 (2d Cir. 2015) (citation omitted).

The defendants did not serve their privilege log at the time they asserted their objections to the plaintiff's First Request for Production of Documents based on the attorney-client privilege and attorney work product doctrine, December 22, 2020, in violation of Fed. R. Civ. P. 26(b)(5)(A) and Local Civil Rue 26.2(b). The defendants did not provide any justification for the delay in submitting their privilege log to the plaintiff, notwithstanding the plaintiff's requesting it repeatedly and the defendants representing to the Court in their March 19, 2021 letter that, "[w]hat we believe to be the final documents are being produced on Monday, March 22, 2021 together with Defendant's interrogatory responses." The Court finds that the defendants' privilege log, due on December 22, 2020, when the defendants responded and

asserted objections to the plaintiff's First Request for Production of Documents but served on the date the plaintiff made the instant motion, April 20, 2021, is untimely.

The plaintiff asserts that the defendants waived their privilege claims by failing to submit a timely privilege log, and their privilege log is deficient on the grounds that: (i) records are indicated as withheld because they are irrelevant; and (ii) the privilege log does not identify adequately the documents withheld, such as, for example, withheld documents of Eric Ogden and his communications with Clyde & Co., containing only a single entry with reference to Clyde & Co. communications without describing the nature of the individual or group records. The defendants contend that their delay in producing "an otherwise detailed and compliant privilege log" does not warrant waiver.

The defendants' privilege log styled "Underwriters' Work Product Privilege Log-Jessore," contains improperly item No. 210 "Marine Claims Movement Reports" described under the rubric "BASIS OF PRIV" as "Irrelevant to Jesseas II and/or beyond the scope of 26(b)," because relevance is not the basis of any privilege, and Rule 26 provides that only "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case" is subject to discovery. Fed. R. Civ. P. 26(b)(1). The seven-page privilege log contains on the first page 21 names of certain persons and their initials, without identifying in the privilege log who those persons are, their roles in this action and their relationships to the litigants in this action. Saville, one of the 21 persons listed in the privilege log, stated in his affirmation in opposition to the motion that he is "a member of Hill Rivkins LLP, counsel for Defendants in the captioned matter." Nicholas, one of the 21 persons listed in the privilege log, stated in his affirmation that he is "a solicitor and partner in Clyde & Co., an international law firm" retained by "Lloyd's Syndicate BRT 2987, referred to as Brit Global Specialty, on or about

June 13, 2017, in connection with a claim submitted by Jessore Management SA," "to consider and evaluate potential issues with respect to coverage under the Policy" and "in connection with certain investigative French proceedings instituted by plaintiff Jessore before the High Court of Perpignan in May 2017."  Nicholas stated in his affirmation that: (a) Clyde & Co. "appointed Hervé Laroque of the French law firm Laroque and Partners . . . to protect and represent Brit's interests [in] the various French court proceedings"; (b) "Clyde & Co. on behalf of Underwriters appointed Eric Ogden as a consulting expert to advise on certain technical issues raised in the French proceeding, such as the cause of  the mast failure"; and (c) "[i]n addition to myself, Craig Bird and William Melbourne of Clyde & Co. were also assigned to this matter."  Nicholas did not identify Craig Bird and William Melbourne as attorneys, the capacity in which "each was assigned to this matter" or what "this matter" is, given that Nicholas made statements about more than one matter for which he asserts Clyde & Co. was engaged.  Nicholas did not identify his role in this action, if any, or the roles in this action, if any, of others he referenced in his affirmation.  No other persons from the list of 21 names in the privilege log or their roles and relationships with the litigants in this action are identified or explained by the defendants anywhere in their submissions.

The rubric "TYPE" in the privilege log indicates "Email" or "Email Chain," except for item No. 153 "Invoices," item No. 202 "Policy Transaction signings," and item No. 210, mentioned above as included improperly in the privilege log.  The privilege log also contains the rubrics "DATE FROM," "DATE TO," "SENDER/RECEPIENTS," "CC," "BASIS OF PRIV" and "SUBJECT."  The privilege log indicates under the rubric "BASIS OF PRIV," "Atty Client," "Work Product" or both as the basis of privilege, except item No. 210.  The rubric "SUBJECT" indicates "Emails providing legal advice re:[]," "Emails containing  legal advice

re:[]," "Emails discussing legal advice re:[]," "Emails discussing legal strategy re:[]," "Emails discussing strategy re:[]," "Emails discussing litigation strategy re:[]," 'Forwarded emails," "Email forwarding," "Emails seeking and offering legal advice re:[]," "Email regarding advice re:[]," "Emails seeking legal advice re:[]," "Emails providing update," "Email forwarding survey report," "Clyde & Co Invoices," "Internal ECF document" and "Clyde & Co Claim File."

The defendants argue that "Ogden's files and correspondence with counsel are protected from disclosure" by the attorney-client privilege. However, Ogden's name is not included in the list of 21 names contained in the privilege log, notwithstanding the defendants' argument that "Ogden's files and correspondence with counsel are protected from disclosure" by the attorney-client privilege. No explanation is provided by the defendants for the inconsistency between their argument that "Ogden's files and correspondence with counsel are protected from disclosure" by the attorney-client privilege and their privilege log which does not identify Ogden and does not indicate as withheld Ogden's communications asserted in the memorandum of law to be protected by the attorney-client privilege.

The defendants' privilege log's title, "Underwriters' Work Product Privilege Log – Jessore," is misleading because it identifies only the asserted work product doctrine, but the privilege log also includes assertions of attorney-client privilege. The privilege log is not dated and does not identify anywhere the corresponding document requests in response to which documents are withheld or the Bates numbers of the documents withheld. The defendants did not submit any evidence explaining how or why withheld documents: (i) item No.153 referenced under the rubric "TYPE" as "invoices," dated "2/6/18," and described under the rubric "SUBJECT" as "Clyde & Co Invoices" are protected by the attorney-client privilege, see DiBella v. Hopkins, 403 F.3d 102, 120 (2d Cir. 2005) ("In New York, attorney time records and billing

20

statements are not privileged when they do not contain detailed accounts of the legal services rendered."); and (ii) item No. 202 referenced under the rubric "TYPE" as "Policy Transaction signings," undated, described under the rubric "SUBJECT" as "Internal ECF document containing reserve info," without identifying any person associated with it as "SENDERS/RECIPIENTS" or otherwise, are protected by the attorney-client privilege and work product doctrine.  For example, the defendants failed to explain anywhere in their submissions, including Saville's and Nicholas's affirmations, why or how the documents are protected in this action by the attorney-client privilege and work product doctrine, such as those described under the rubric "SUBJECT" as "Emails regarding the payment of legal fees with attached invoice," "Emails containing legal advice: placing timeline," "Emails providing legal advice re: placing of policy," "Emails providing legal advice re: payment of legal fees," "Emails providing legal advice re: response to JLT," "Emails containing legal advice re: payment to Laroque" and "Emails providing legal advice re: Laroque appointment."  Moreover, Nicholas stated in his affirmation that "Clyde & Co's role was to investigate and consider the potential coverage and non-disclosure issues in connection with Jessore's claim and defend Underwriters' interests with respect to the French Proceedings," but he did not state anywhere anything about his or Clyde & Co.'s role in this action.  Nicholas's affirmation contains improper conclusory assertions, such as: (a) "[i]t is Clyde & Co's position that the communications among Underwriters and Clyde & Co. are protected by the attorney-client privilege and Underwriters have not waived that privilege;" and (b) "[i]t is Clyde & Co.'s position that all communications among Clyde & Co., the Underwriters, Mr. Laroque and Mr. Ogden are protected by the attorney-client privilege and Underwriters have not waived that privilege."  Identifying persons listed in the privilege log who received and sent withheld communications, their roles in this litigation and the capacities in

which they received and sent withheld communications in the circumstance of this case is
fundamental information necessary to establish the application of the attorney-client privilege,
see People v. Osorio, 75 N.Y.2d 80, 84, 549 N.E.2d 1183, 1185 (1989) ("Generally,
communications made between a defendant and counsel in the known presence of a third party
are not privileged."), as well as the work product doctrine.

The defendants' assertion of work product doctrine is accompanied by the assertion of
attorney-client privilege in each instance, except that work product doctrine only is asserted with
respect to: (1) item No. 47, "Emails discussing IBNR spreadsheet" dated "11/25/19"; (2) item
No. 48, "Emails discussing premium, letter from Hill Betts," dated "3/12/20" and "3/19/20"; (3)
item No. 49, "Emails discussing ECF entries," dated "1/18/19"; and (4) item No. 50, "Emails
discussing litigation strategy re: avoidance," dated "11/22/19."  Item No. 48 indicates it was
"CC" to "DP/HN." Although the privilege log indicates that "DP" stands for Darren Perrett, a
person whose role in this litigation is not demonstrated by the defendants' submissions, the
identity of "HN" is not indicated in the privilege log or anywhere else in the defendants'
submissions.  Similarly, item No. 50 indicates "MH" under the rubric
"SENDERS/RECEPIENTS," but the privilege log does not identify "MH" and neither do the
defendants' submissions.

The defendants assert that, "[g]iven the direct threat of litigation by Jessore's counsel in
December 2018, it is entirely reasonable for Underwriters in this litigation to take the position
that litigation was reasonably anticipated as of the date of that threat December 18, 2018, and
documents prepared after that date are subject to attorney work product where applicable,"
making citation to Exhibit C to Saville's affirmation.  Saville states in his affirmation that
"Exhibit C is a true and accurate copy of the December 18, 2018 letter from Jessore's French

counsel Mr. Moulet to Underwriters' French counsel Mr, Laroque, taken from Jessore's production in this litigation."  However, Saville does not explain in his affirmation the content of Exhibit C and he does not mention anticipation of the litigation or any facts in connection with any anticipated litigation.  In Exhibit C, the December 18, 2018 letter, styled "Letter de Procedure – Formal Notice Insurer's Breach of the Insurance Policies with Certificate Nr. B0901LH722775" and containing "YOUR REF: BRIT SYNDICATE 2987 – INSURANCE POLCIEIS CERTIFICATE NR. B0901LH722775," Moulet wrote on behalf of the plaintiff, inter alia, "if your principals fail to pay within 8 days from this formal notice the Hull Machinery and Equipment indemnity for the amount of EUR. 4.274.000 (as provisional indemnity only), referee proceedings will be introduced before the French court having authorized Court survey as the court having jurisdiction to grant provisional indemnities."  It is unclear from the privilege log and the defendants' submissions how or why work product doctrine applies to "Emails discussing ECF entries" dated "1/18/19," or what "ECF entries" were being discussed or their relevance, if any, to the instant action, given that "Emails discussing ECF entries" occurred more than one year prior to this action, and no evidence was submitted identifying other actions involving "ECF entries," assuming that "ECF" stands for "Electronic Case Files," the term used by the United States federal courts as part of an acronym "CM/ECF," Case Management/Electronic Case File, the federal judiciary's system that allows case documents to be filed with the court electronically.

Nicholas stated in his affirmation that Clyde & Co. was retained "to consider and evaluate potential issues with respect to coverage under the policy" and "in connection with certain investigative French proceedings instituted by plaintiff Jessore before the High Court of Perpignan in May 2017."  Nicholas stated that "Brit was not initially a party to the French

Proceeding," "commenced against SAS Privilège Marine, the builder, and SA AXA France, Privilège's insurers," and after "Privilège and AXA France applied to the French Court for an Order joining Brit to the French Proceedings" in early 2020, "[t]he Order joining Brit was issued on September 9, 2020."

Despite factual deficiencies in Saville's and Nicholas's affirmations, in reply, the plaintiff submitted a declaration by its French counsel, Moulet stating: "There was no thought of litigation by Jessore against the Underwriters, until the end of 2018, when I wrote to Herve Laroque. Even then, the Underwriters, via Mr. Laroque and the brokers, persuaded Jessore to continue to await the final investigative report of the technical expert appointed by the French Court." Thus, the Court finds that the litigation was anticipated reasonably since the issuance of Moulet's December 18, 2018 letter.

However, the defendants' failure to identify in their privilege log the 21 persons whose communications are asserted to be protected by the attorney-client privilege and work product doctrine and to submit evidence explaining their roles in this litigation and the capacities in which those persons sent or received the withheld communications, apart from Saville identifying himself as the defendants' attorney in this action and Nicholas's identification of himself as a solicitor and partner in Clyde & Co. retained in connection with the plaintiff's marine insurance claim, and Hervé Laroque of the French law firm and Ogden, a consulting expert, in connection with certain French proceedings, coupled with conclusory assertions in the privilege log that emails are seeking, offering or discussing legal advice, sometimes referencing certain topics, such as "premium," "discovery" or "French proceedings," is not adequate to allow: (1) the plaintiff to ascertain the propriety of the defendants' withholding  documents based on the attorney-client privilege and work product doctrine; and (2) the Court to conclude that the

attorney-client privilege or work product doctrine applies.  The Court finds that, in the circumstance of this case, the defendants' privilege log is deficient.

Having produced an untimely and inadequate privilege log without justification to excuse its untimeliness or sufficient evidence to remedy its inadequacy and considering the requirement under New York law that "the [attorney-client] protection claimed must be narrowly construed," Spectrum Sys. Int'l Corp. v. Chem. Bank, 78 N.Y.2d 371, 377, 575 N.Y.S.2d 809, 813 (1991), the Court finds that the defendants failed to carry their burden of establishing that the withheld documents are protected by the attorney-client privilege.  For the same reasons, the Court finds that the defendants failed to establish that the withheld documents are protected by the work product doctrine.  Accordingly, the withheld documents listed in the defendants' privilege log must be disclosed to the plaintiff.

***Failure to Respond to the Plaintiff's Second Request for Production of Documents***

The defendants do not contest that they failed to respond to the plaintiff's Second Request for Production of Documents but assert that the Second Request for Production of Documents was duplicative of the First Request for Production of Documents and, "[w]hile Requests 2 and 3 may have requested new material, Request No. 1 did not and, therefore, the objection previously interposed remained valid.  Therefore, there is no basis to find that Defendants waived their objection."  However, the defendants do not make citation to any legal authority in support of their argument that "the objection previously imposed remained valid."  The defendants concede that request Nos. 2 and 3, two out of three document requests in the plaintiff's Second Request for Production of Documents, are not duplicative of the First Request for Production of Documents because they "may have requested new material," but provide no

explanation for failing to respond to them by producing responsive documents or asserting proper objections.

Request No. 1 of the plaintiff's Second Request for Production of Documents seeks "[a]ll documents of Clyde & Co. (which term includes Clyde & Co. and all related entities) concerning the Policies, the Loss, the Risk and the Claim, including without limit, all communications among and between Clyde & Co. and Defendants and Clyde & Co. and Marsh JLT." The defendants assert that request No. 1 in the plaintiff's Second Request for Production of Documents duplicates request Nos. 19, 20, 27, 30, 31 and 33 in the plaintiff's First Request for Production of Documents, seeking respectively: (a) "A complete copy of each Defendant's claim file and any other claim file(s) concerning the Loss and/or Claim," request No. 19; (b) "All communications by and between Defendants, the Plaintiff, and/or any third-party individual or entity relating in any way to the response to the Loss, salvage, and/or investigation of the Loss and/or Claim," request No. 20; (c) "All documents concerning the Loss of the Vessel," request No. 27; (d) "All (i) correspondence, (ii) communications, and (iii) documents internally or between you and any other person referring or relating to rejection of the Claim, including the issue whether to reject the Claim and/or the decision to reject the Claim," request No. 30; (e) "All (i) correspondence, (ii) communications, and (iii) documents relating or referring to correspondence and/or communications internally or between you and any other person referring or relating to Reinsurance for the Claim and/or Loss," request No. 31; and (f) "All investigative files and documents concerning the Loss," request No. 33. On their face, request Nos. 19, 20, 27, 30, 31 and 33 in the plaintiff's First Request for Production of Documents do not identify or mention Clyde & Co. and Marsh JLT, in connection with which documents and communication are sought in request No. 1 of the plaintiff's Second Request for Production of Documents.

Since request Nos. 19, 20, 27, 30, 31 and 33 in the plaintiff's First Request for Production of Documents appear much broader in scope than request No. 1 of the plaintiff's Second Request for Production of Documents, it is conceivable that responses to request No.1 may include certain documents and communications already produced in response to request Nos. 19, 20, 27, 30, 31 and 33 in the plaintiff's First Request for Production of Documents.  However, such a possibility does not provide a reasonable justification for the defendants' failure to respond and make proper objections to request No. 1 in the plaintiff's Second Request for Production of Documents, because the narrow scope and entities identified in request No. 1 also indicate the possibility that responding to it may include certain non-duplicative responsive documents and communications.  Based on the defendants' concession that two thirds of the plaintiff's Second Request for Production of Documents "may have requested new material" and after reviewing the plaintiff's document requests at issue and the parties' arguments, the defendants' objections to the plaintiff's Second Request for Production of Documents on the ground that they are duplicative are overruled.

Although the defendants assert that they did not respond to the plaintiff's Second Request for Production of Documents because they are duplicative, they also contend that "the requested documents are subject to attorney client privilege and/or attorney work product" asserted with respect to the requests in the plaintiff's First Request for Production of Documents.  However, the defendants do not explain the relevance of their assertion of attorney-client privilege and work product doctrine in response to the plaintiff's First Request for Production of Documents to request Nos. 2 and 3 of the plaintiff's Second Request of Production of Documents, which the defendants concede "may have requested new material."  The defendants' strategic decision not to respond, including not to assert attorney-client privilege and work product doctrine to the

plaintiff's Second Request of Production of Documents, despite knowing that two thirds of requests contained therein "may have requested new material" was unjustified and unreasonable. As the Court explained above, the defendants' privilege log does not identify in any manner the document requests in response to which documents are withheld.  Given the defendants' argument that they did not respond to the plaintiff's Second Request for Production of Documents because they are duplicative, it appears that certain documents from the defendants' privilege log may be withheld not only in response to the plaintiff's First Request for Production of Documents, but also in response to the plaintiff's Second Request for Production of Documents.  Notwithstanding the defendants' failure to assert the attorney-client privilege and work product doctrine with respect to the plaintiff's Second Request for Production and to the extent that withheld documents listed in the privilege log are also responsive to the plaintiff's Second Request for Production of Documents, for the reasons explained above, the Court already found that the defendants failed to carry their burden of establishing that the attorney-client privilege and work product doctrine apply in the circumstance of this case.   Accordingly, the defendants' objections to the plaintiff's Second Request for Production of Documents based on attorney-client privilege and work product doctrine are overruled.  Therefore, the defendants must respond to the plaintiff's Second Request for Production of Documents.

***Defendants' General Objection No. 2 to the Plaintiff's Collective Definition of Defendants***

The defendants assert that they objected properly to producing documents "related to this claim from the following market" and "communications between all underwriters exceed the scope of Rule 26," as it is duplicative and irrelevant.  The plaintiff asserts that the defendants' general objection No. 2[1] in their response to the plaintiff's First Request for Production of

---

[1] The defendants' objection No. 2 "to definitions and instructions," Docket Entry No. 58-2, states:

Documents, "not to produce documents in the possession of three of the five defendants is unwarranted" because evidence demonstrates that all underwriters communicated concerning voiding of the policy at issue and, since Brit and Syndicate 2007, the two leading underwriters, have not produced such communications, compelling production is warranted.

The defendants failed to make: (a) specific objections to any particular document requests as duplicative, irrelevant and unduly burdensome for the reasons asserted in their general objection No. 2, such that no response was warranted to the plaintiff's document requests from three out of the five defendants; and (b) citation to any legal authority in support of their general objection No.2. Accordingly, the defendants' objections, contained in their general objection No. 2 to the plaintiff's "definitions and instructions," are overruled and all defendants must produce responsive documents.

**Sanctions: Adverse Inference**

The plaintiff asserts that sanctions are warranted based on the defendants' failure to "abide by their discovery obligations and Your Honors' [March 26, 2021] Order," Docket Entry No. 31,[2] and the Court "warned of the possibility of sanctions, including the 'harshest sanction"

---

Defendants object to Plaintiff's collective definition of "Defendants" to the extent that it disregards the corporate separateness of various entities. Defendants have no obligation to furnish information that is not within their knowledge or possession. Defendants further object to Plaintiff's demand that each Defendant Responses pursuant to Rule 26(b), insofar as: such demand is unduly burdensome and not proportional to the needs of the case; and the discovery sought would be unreasonably cumulative or duplicative, or could be obtained from other sources that are more convenient, less burdensome, or less expensive. Accordingly, the following Responses are being made on behalf of defendants Brit Syndicate 2987 a/k/a Brit UW Limited ("Brit"), the Claims Lead, and Lloyd's Syndicate 2007 a/k/a Axis Corporate Capital Limited ("Axis"), the Claims Agreement Party.

[2] The Court's March 26, 2021 order directed the following:
On or before April 2, 2021, the parties are directed to: (1) meet and confer in good faith, via a video conferencing platform, such as Zoom, to attempt to resolve any remaining discovery issues; (2) file a joint letter, no longer than two pages, identifying solely (i) any document requests and interrogatories remaining at issue, (ii) each party's proposed solution to resolve any remaining issue(s), supported by legal authority and (iii) the reason for rejecting any proposed solution, supported by legal authority. Any party's failure: (a) to meet and confer in good faith as directed

in its March 15, 2021 order, Docket Entry No. 28,[3] and the March 26, 2021 order, Docket Entry

No. 31; thus, "an adverse inference as to unproduced records on nondisclosure and policy

nullification" is warranted.  The plaintiff's assertion that the defendants failed to comply with the

Court's March 26, 2021 order is meritless, as demonstrated in the parties' April 2, 2021 joint

letter, asserting that the "parties conducted a meet and confer via Zoom on March 31, 2021,

concerning Plaintiffs' [sic] Pre-Motion Letter to Compel Discovery responses (Docket 26)."

Docket Entry No. 32.  In its argument that "sanctions are warranted for defendants' obstructive

conduct and failure to comply with the Court's orders," the plaintiff does not: (1) identify any

part of the Court's March 26, 2021 order or any other order with which the defendants failed to

comply; and (2) assert that the defendants acted in bad faith.  In its reply argument, "Sanctions,

Including the Harshest, Are Justified," the plaintiff asserts that the defendants' "persistent bad

faith refusal to cooperate and comply with their discovery obligations," seeking, for the first

time, that the Court "strike the Answer."  The plaintiff's request for new relief, namely, an order

striking the answer, asserted for the first time in its reply, is untimely and will not be considered

by the Court.  Although the Court does not condone the defendants' failure to respond to the

plaintiff's interrogatories and Second Request for Production of Documents, and to produce

timely a privilege log, the Court finds that the plaintiff's assertion of bad faith in its reply

argument concerning sanctions, not asserted in the plaintiff's opening argument that "sanctions

are warranted for defendants' obstructive conduct and failure to comply with the Court's orders,"

---

by the Court; and (b) to comply with this order, will be subject to sanctions, including the harshest sanctions.  The plaintiff's request for a pre-motion conference, Docket Entry No. 26, is denied.

[3] The Court's March 15, 2021 order directed the following:

On or before March 19, 2021, the defendants shall file their response, no longer than four pages, to the plaintiff's March 2, 2021 letter.  The parties must comply with the Court's Individual Rules of Practice in connection with any general pretrial matters before the Court.  Failure to comply timely with this order may result in imposition of sanctions, including the harshest sanctions.

The defendants complied with the Court's March 15, 2021 order by filing timely their response.  See Docket Entry No. 29.

is untimely and, in any case, unconvincing.  The Court finds that the plaintiff did not establish

that the defendants failed to comply with the Court's March 26, 2021 order or any other order.

Accordingly, neither an adverse inference sanction nor any other sanction based on the alleged

failure to comply with the Court's orders, is warranted.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to compel and for sanctions, Docket

Entry No. 56, is granted in part and denied in part.  The defendants shall produce discovery

directed above within seven days from the date of this order.

Dated: New York, New York                                    SO ORDERED:
      September 3, 2021

                                                _Kevin Nathaniel Fox_
                                                KEVIN NATHANIEL FOX
                                                UNITED STATES MAGISTRATE JUDGE